[Civ. No. 150.    Third Appellate District.—January 30, 1906.]

## BOARD OF LIBRARY TRUSTEES OF CITY OF HANFORD et al., Appellants, v. BOARD OF TRUSTEES OF CITY OF HANFORD et al., Respondents.

Public Libraries—Municipal Corporations—Donation to City—Control of Construction of Library Building.—The board of library trustees of a city of the sixth class created under the act of March 23, 1901 (Stats. 1901, c. 170, p. 557) for the establishment and maintenance of public libraries within municipalities, are not entitled to control the construction of a public library building from a fund donated to the city, *eo nomine,* and not to them as trustees, "for the express purpose of defraying the cost and expense of building and constructing a building to be used only for the purpose of a public library building" in said city. The construction of such building, under the terms of the donation, rests with the board of trustees of the municipality.

APPEAL from a judgment of the Superior Court of Kings County.   H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Dixon L. Phillips, and H. S. Jacobs, for Appellants.

H. P. Brown, for Respondents.

CHIPMAN, P. J.—This is an action to restrain defendants from letting a contract for the erection of a public library building in the city of Hanford; the cost thereof to be paid out of the donation of $12,500 made by Andrew Carnegie.   A demurrer was interposed to the complaint for insufficiency of facts, also that plaintiff had not legal capacity to sue, also for uncertainty.   The demurrer was sustained without leave to amend, and judgment passed for defendants that plaintiffs take nothing by the action.

It appears from the complaint: That Hanford is a city of the sixth class, organized in January, 1892, under the act of March 13, 1883 (Stats. 1883, c. 49, p. 269); that pursuant to the act "to establish free public libraries and reading-rooms," approved April 26, 1880 (Stats. 1880, c. 126, p. 231), the defendant board of trustees of the city of Hanford did regularly and duly pass a resolution establishing in said city a free public library and reading-room, and did provide for the levy and collection, as in other cases, annually, a tax not to exceed one mill on the dollar for the purpose of maintaining such free public library and reading-room in said city; that since April 11, 1900, there has been, and now is, a duly appointed, elected, and qualified board of library trustees of the aforesaid library and free reading-room, established as aforesaid, managed and controlled by a board of library trustees consisting of five members; that on April 15, 1903, the plaintiffs above named became, ever since have been, and now are, the duly elected and acting board of library trustees of said city, and are vested with all the rights and powers conferred upon said board under the act of March 23, 1901 (Stats. 1901, c. 170, p. 557), being "an act to provide for the establishment and maintenance of public libraries within municipalities"; that "between the first day of April, 1903, and the first day of July, 1903, one Andrew Carnegie gave and donated the

sum of $12,500.00 to the said city of Hanford for the express purpose of defraying the cost and expense of building and constructing in said city of Hanford a building to be used only for the purpose of a public library building in said city of Hanford for the public generally and the inhabitants of said city in particular, and the said city of Hanford thereafter did duly accept said gift and donation; and the said gift and donation was by the said Andrew Carnegie declared and created . . . prior to the commencement of this action and about May 22, 1903.'' It is then alleged that ever since said sum was so donated ''the said board of library trustees of the said city of Hanford, as such board, have in their judgment duly and regularly concluded and determined that no suitable building, or portion thereof, has ever, at any time since the giving and donating of said money by said Carnegie, been provided, or now provided, by the legislative body of said city of Hanford, to wit, the board of trustees of said city of Hanford, for said library therein.'' The complaint then sets forth that about January 25, 1904, the defendants advertised for plans and specifications and estimates of cost for the ''construction of a building for said public library in said city, and such cost to be paid out of and from the money so donated and given by said Carnegie,'' and that defendants, about February 23, 1904, ''adopted plans for such building, to be paid for out of such fund, and are about to award a contract for the construction of said public library building to be paid for out of said donated fund''; that such acts on the part of defendants ''were and are unlawful and a usurpation of authority which the complaint alleges properly and legally should of right be done and performed by plaintiffs, as such board of library trustees under said act of March 23, 1901.'' An injunction is prayed for ''restraining defendants from awarding said or any contract for the purposes named, the cost of which is to be paid out of said money so donated by said Carnegie and from interfering with plaintiffs in the discharge of their duties imposed upon them by law.''

The principal question argued in the briefs, and calling for decision, is as to which one of these bodies is legally empowered to construct the proposed library building. Respondents set forth some facts in their brief as to the terms and

conditions on which Mr. Carnegie made the gift, but they cannot be considered, however proper they might be in an answer. We are confined in our examination to the facts alleged in the complaint and admitted by the demurrer. It appears that the donation was to the city, not to the board of library trustees, to which it might have been legally made by the donor, as the act gives this board power to take property by gift. (Stats. 1901, c. 170, p. 557.) The question is narrowed to this: The money having been given to the city "for the express purpose of defraying the cost and expense of building and constructing in said city of Hanford a building to be used only for the purpose of a public library building," have the trustees of the library the exclusive right to spend this money, or may not the trustees of the city do so? The powers of the board of trustees of cities of the sixth class are set forth in section 862 of the municipal government act of 1883 (Stats. 1883, c. 49, p. 269), amended March 9, 1903 (Stats. 1903, c. 86, p. 93). Among their enumerated powers are: "Second—To purchase, lease, or receive real estate and personal property as may be necessary or proper for municipal purposes, and to control, dispose of, and convey the same for the benefit of the city or town. . . . Twelfth—To erect and maintain buildings for municipal purposes. Thirteenth —To acquire, own, construct, maintain and operate . . . public libraries. . . . Sixteenth—To do and perform any and all other acts and things necessary or proper to carry out the provisions of this chapter."

The act to establish free public libraries and reading-rooms was passed April 26, 1880 (Stats. 1880, c. 126, p. 231), under which the Hanford public library and reading-room was established by the city. This act was repealed by act of March 23, 1901 (Stats. 1901, c. 170, p. 557), the twelfth section (page 560) of which contains also the proviso "that as to existing libraries this act shall be deemed a continuation thereof, and such libraries shall be governed hereby accordingly"; i. e., the repealing act continues existing libraries established under the act of 1880, but they are to be governed by the act of 1901, to which we must now look for the powers of the board of library trustees. The complaint avers that the trustees (plaintiffs) were appointed and are acting under the act of 1901. This act provides, among other things, as follows:

The library is to be managed by the trustees appointed by the executive head of the municipality. Section 3 (page 558). The board shall have power: 1. To make rules for the government of the libraries "and all property belonging thereto"; 2. To administer any trust created for such libraries "and receive by gift, devise, or bequest and hold in trust or otherwise," etc.; 3. To appoint officers and employees and fix their compensation; 4. To purchase books and other personal property; 5. "To purchase such real property, and erect or rent and equip such building or buildings, room or rooms, as may be necessary, when in their judgment a suitable building, or portion thereof, has not been provided by the legislative body of the municipality for such libraries"; 8. To do and perform all other acts necessary or proper to carry out the provision of the act. Section 5. The trustees are required to report to the municipality, and the latter is required to levy a tax to maintain the library and to purchase property necessary therefor. Section 8 (page 559) provides: "The revenue derived from said tax, together with all money acquired by gift, devise or bequest, or otherwise for the purposes of the library, shall be apportioned to a fund to be designated the library fund and be applied for the purposes herein authorized. If such payment into the treasury should be inconsistent with the conditions or terms of any such gift, devise, or bequest, the board shall provide for the safety and preservation of the same, and the application thereof to the use of the library, in accordance with the terms and conditions of such gift, devise or bequest. Payments from said fund shall be made in the manner provided for the payment of other demands against the municipality; provided, that demands upon said fund shall be presented to the board of library trustees for allowance rather than to the legislative or other body of the municipality." Section 11 (page 560) provides: "The title to all property acquired for the purposes of such libraries, where not inconsistent with the terms of its acquisition, or otherwise designated, shall rest in the municipalities in which such libraries are, or are to be situated, and in the name of the municipal corporations may be sued for and defended by action at law or otherwise." Section 13 provides for the disestablishment of any library established under the act, upon

the petition of one-fourth of the electors of any such municipality.

It is not necessary to enter upon any extended analysis of these various acts to determine the limitations of the several powers of the respective boards of trustees in the case now before us. The acts authorizing the establishing of libraries cannot be held to embrace by their terms a library building to be erected with funds donated to the city of Hanford, unless it be shown that the gift, by its terms and conditions, or by just implication, so provides. It is made the duty of the municipality to provide a suitable building for the library, and it is only when it fails so to do that the board of library trustees are authorized to provide the building. But the statute does not deal with libraries other than those contemplated by the statute. It was said of the act of 1880, in *People* v. *Howard,* 94 Cal. 73, [29 Pac. 485] : "The act of 1880 does not apply to all libraries, but only to such as may be established under its provisions. It does not give to the trustees elected under it any powers over other libraries"—and the same may be said of the act of 1901. The library act, in terms, excepts from its operation money donated, if the conditions of the gift are inconsistent with the provisions of the act, and the act requires "the application thereof [the money given] to the use of the library in accordance with the terms and conditions of such gift." The complaint shows that the gift here was made to the city of Hanford "for the express purpose of defraying the cost and expense of building and constructing a building to be used only for the purpose of a public library building in said city," but it is nowhere alleged that the donor intended this building to take the place of the building which the municipality might erect under the provisions of the law, or that the money donated was to become a part of the library fund provided for by law. So far as appears, the Carnegie library building is to be used for library purposes entirely independent of the library building and library authorized by the act. The complaint shows a gift to the city for a specific purpose, and no other, and, as the gift is to the city, and not to the library trustees, who might have been named by the donor, it would seem to follow that the city alone could carry out this specific object, namely, erect the building. The allegation that the gift "was by the said

Andrew Carnegie declared and created for the public library of the said city of Hanford, and construction and building of a public library building in said city," is not sufficient to show that the money thus donated was made a part of the library fund over which a certain control is given to the library trustees. It will be noticed that the act provides for the disestablishment of the library created by the act upon the petition of one-fourth of the electors of the city. It is not to be presumed that Mr. Carnegie would make a donation the purpose of which could be thus easily thwarted. It is altogether probable that he made 'ample provision by the conditions of the gift to secure some sort of permanency to the library he was helping to create. The pleader fails to set forth any of the conditions of the gift further than that the money was to be used to erect a library building. As the donor intrusted the fund to the city alone, the city alone can execute the trust. When the city has provided a library building by the expenditure of this money, and has in other respects performed the conditions imposed, whatever they may be, it is probable that there will be nothing found in the terms of the donation to interfere with the library now in use, and as augmented by other books being placed under the management of the board of library trustees.

But however this may be, we think the complaint fails to show sufficient facts to warrant the court in interfering with the city authorities in their effort to provide a public library for the city of Hanford out of the Carnegie money given to the city for that purpose.

The judgment is affirmed.

McLaughlin, J., and Buckles, J., concurred.